### RUHL v. HEINTZE.

(Supreme Court, Appellate Division, Second Department. October 14, 1904.)

1. HUSBAND AND WIFE—DUTY OF HUSBAND TO SUPPORT WIFE.

The common-law duty of a husband to support his family has not been changed by the legislation relating to married women, and the liability for necessaries furnished to the family of a married man is presumptively the husband's, unless the wife, by an express agreement, charges herself personally with the same.

¶ 1. See Husband and Wife, vol. 26, Cent. Dig. §§ 121, 122, 131.

**2. SAME.**

A contract for board and lodging made by a married woman presumptively creates a liability against the husband; and the boarding house keeper, in order to bind the wife, has the burden of proving that she in express terms undertook to pay therefor.

**3. SAME.**

On the issue whether a married woman was liable for board and lodging furnished her, evidence *held* to fail to show that she made an express agreement to pay therefor relieving her from any liability.

**4. SAME—PROMISE BY WIFE—CONSIDERATION.**

A promise by a married woman to pay for board and lodging furnished her under contract with her husband is without consideration.

**5. SAME—VALIDITY—STATUTE OF FRAUDS.**

A parol promise by a married woman to pay for board and lodging furnished her under a contract with her husband is a promise to pay for the debt of another, and is void under the statute of frauds.

**6. WITNESSES—IMPEACHMENT.**

A party making the adverse party his own witness is not bound by the testimony, but may introduce evidence to establish a fact contrary to that testified to by the adverse party.

Hirschberg, P. J., dissenting.

Appeal from Municipal Court of New York.

Action by Jennie Ruhl against Carl Heintze. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Arthur P. Hilton, for appellant.
Frederick Klein, for respondent.

WOODWARD, J. The plaintiff brings this action to recover certain trunks containing her personal wardrobe, or their value, such trunks being retained by the defendant, a boarding house keeper, who claims a lien upon the same for the amount of a board bill aggregating something over $150. The answer alleges that the defendant, between the 11th day of May, 1903, and the 6th day of July, 1903, furnished to the plaintiff and to Jacob Ruhl, her husband, at the request of the plaintiff and her said husband, accommodation, board and lodging for herself, the plaintiff's said husband, and the plaintiff's daughter, the agreed price of which was $200. Upon the trial the learned court below dismissed the complaint, and gave judgment for the defendant for the amount of the counterclaim. The plaintiff appeals.

The plaintiff was called as a witness in her own behalf, and testified to facts sufficient to establish her right to the return of the trunks, and upon cross-examination the defendant made her his witness to establish the alleged contract for board, lodging, etc. She testified, in substance, that her husband, Jacob Ruhl, visited Mrs. Heintze, defendant's wife, and engaged rooms and board, getting an option upon the rooms until Saturday evening at 9 o'clock; that on the Saturday evening in question the plaintiff, accompanied by her husband and daughter, visited the premises, and on going to the door were told by Mrs. Heintze that the time had expired, and that the rooms had been rented; that Mrs. Heintze, however, insisted on showing the rooms, and that the entire party visited them; that during the entire visit plaintiff's hus-

band conversed with Mrs. Heintze in German, which the plaintiff could not understand, and that she knew absolutely nothing of what arrangements were being made in reference to the price until after they had come downstairs and had gone out in front of the house, when plaintiff's husband told her he had engaged the apartments, with board for the three, at $25 per week; that during the time the plaintiff was in the rooms she told her husband, in response to an inquiry from him, that she would come to the apartments one week from the following Monday, it appearing from the subsequent testimony that the plaintiff had been temporarily living apart from her husband, who was addicted to periodical drunkenness, and that the conversation between husband and wife related to the question of whether she would return and live with him in these particular apartments; that she did take up her residence in such apartments at the time indicated, she and her daughter taking possession with their trunks one week before the husband; that she did not at that time, or at any subsequent time, agree to pay the board and rent; that she handed the checks with which the board was paid to Mrs. Heintze, and that these checks were made to her order by the company which employed her husband, it being explained that, the plaintiff's husband being addicted to drink, it was unsafe to give him the money, his brother, August Ruhl, apparently attending to this detail; and the latter testified (though this was struck out on motion of the defendant, and over the objection of the plaintiff) that these checks represented Jacob Ruhl's earnings, and that they did not belong to Mrs. Ruhl; that she did not, at any subsequent time, promise, in consideration of being permitted to remain in the apartments, to pay all of the board then due and such as should subsequently accrue; and generally negatived the defendant's theory that the plaintiff had contracted to pay for the board and lodgings of the family. In this she was fully corroborated by her daughter, in so far as the original interview was concerned, she insisting that the entire conversation relating to the terms of the contract was in German, which she could not understand, and that it was only after they had reached the ground in front of the house that her father told them the rate which had been agreed upon.

When we remember that the common-law duty of a husband to support his family has not been changed by legislation relating to married women, and that liability for necessaries furnished to the family of a married man is presumptively and primarily upon the husband, unless the wife by express agreement charges herself personally with the same (Grandy v. Hadcock, 85 App. Div. 173, 174, 83 N. Y. Supp. 90, and authorities there cited), it would seem that the defendant had failed to establish any kind of liability on the part of the plaintiff. The presumption that the contract was that of the husband, even if made by the wife, for board and lodging, would be against the defendant. Board and lodging are necessaries, and where the defendant had notice that the plaintiff had a husband she was bound to assume that she was contracting with him for the support of his family, unless the plaintiff undertook in express terms to assume the burden which the law casts upon the husband. It appears without contradiction that plaintiff's husband went to Mrs. Heintze before the visit of the family to the premises

on Saturday evening, and secured an option upon the rooms. This contract, while without consideration, was with Mrs. Heintze, acting as agent for the defendant. It was notice to her of the fact that she was dealing with Mr. Ruhl, the head of the family; and when she subsequently permitted the family to occupy the rooms, and accepted pay for them, she consummated the contract originally made with Mr. Ruhl, unless Mrs. Ruhl positively undertook the duty of paying for the support of the family. It appears without contradiction that she had no money of her own, and that she had no resources other than the money furnished her by her husband in the manner which was explained in the evidence, so that the strong inference is raised that she never undertook a responsibility which she had no means of carrying out. But the defendant called Mrs. Heintze, and she testified that when the plaintiff and her husband appeared after the witness had given the option to Mr. Ruhl, the plaintiff, her husband and daughter looked over the rooms, and that, while the conversation between the witness and Mr. Ruhl was carried on in German, that "Mr. Ruhl explained to Mrs. Ruhl, and he made out $25, the large front and large back room, with board for the three; and Mrs. Ruhl said, 'Now I take the rooms, and we will be here Monday, the 6th of October,' and she came Monday the 6th of October." This is the substance of her testimony on which it is sought to establish the plaintiff's liability for the support of Jacob Ruhl's family, though there is some testimony that subsequently, when the witness asked Mrs. Ruhl to pay for the board and lodging, the plaintiff promised to pay all that was due and all that was subsequently to become due; but this is denied, and we are persuaded that the plaintiff did not intend to enter upon any agreement to answer for the debts of her husband, and, if she did, the promise was without consideration, and was void under the statute of frauds, as it was not in writing, signed by the party to be charged. Maxon v. Scott, 55 N. Y. 247, 249.

The plaintiff urges on this appeal that, the defendant having made her his own witness, he is bound by her testimony, under the rule that a party may not impeach his own witness. But there is a difference between introducing evidence to establish a particular fact contrary to that testified to by a party's witness and evidence introduced to impeach a witness, and we are persuaded that under the law the defendant had a right to contradict the plaintiff in regard to the material facts in this case, although he has weakened his case by bringing out the evidence of the plaintiff under his assurance that she was worthy of belief. See Greenleaf on Evidence, § 443; Hunter v. Wetsell, 84 N. Y. 549, 556, 38 Am. Rep. 544, and authorities there cited; Becker v. Koch, 104 N. Y. 394, 401, 10 N. E. 701, 58 Am. Rep. 515, and authorities there cited. The point, is not, however, very material, as we view the case, for we are clearly of opinion that the facts testified to by the defendant's wife do not show any contract between the plaintiff and the defendant by which the former undertakes the burden of supporting the family of Jacob Ruhl. The fair inference from Mrs. Heintze's testimony, making allowances for her imperfect understanding of the English language, is that Mr. Ruhl secured an option for these rooms, subject to the approval of his wife, whom he was trying to induce to live with

him; that he subsequently visited the premises with his wife and daughter, and that his wife, after looking them over, agreed to come there and live; she said she would come there the 6th of October, and she did; but there was no meeting of the minds of the plaintiff and the defendant's agent upon the proposition that the plaintiff was to pay $25 per week for that which it was her husband's duty to provide, and without an express agreement to that effect there would be no liability on her part. Mrs. Heintze's evidence does not contradict, in essential particulars, the evidence of Mrs. Ruhl. Mrs. Heintze does not say that the plaintiff made any agreement to pay for the rooms. She does not say that Mrs. Ruhl understood the price to be paid for the same, although this might be inferred; but where the law presumes that a contract is made with the husband for his family's support, the character of evidence to show an assumption of this duty by the wife ought to be very clear, and the present case is lacking in that respect. The evidence of Mrs. Heintze, in view of her interest in the matter, is strongly corroborative of that of Mrs. Ruhl, and it fails, in our judgment, to show a contract between the parties now before this court.

It is impossible to read this record fairly and to fail to reach the conclusion that Mrs. Ruhl is unfortunate in her husband; that the latter made a contract for board and lodging, and provided for the payment of the same through checks from his employer to the order of his wife, because of his drinking habits; that Mrs. Ruhl paid these checks over to Mrs. Heintze; and that the latter loaned Mrs. Ruhl and her husband money from time to time; and that finally Mr. Ruhl resumed his drinking to such an extent that he became unable to provide the checks, and that Mrs. Ruhl, being unable to supply the money, left the premises, leaving her personal effects, which the defendant is now seeking to hold under a contract which has no existence in fact, but which it has been attempted to patch together since it was discovered that Mr. Ruhl is an irresponsible drunkard.

The judgment appealed from should be reversed, with costs

Judgment of Municipal Court reversed, and new trial ordered; costs to abide the event. All concur, except HIRSCHBERG, P. J., who dissents.